# EXHIBIT A

**Please Note:**
**The Documents Appended Hereto Have Been Redacted**
**To Prevent Any Possible Disclosure of Personal And Private Information**

**Any Documents Marked As A True And Correct Copy**
**Have Also Been Redacted For This Purpose**

Loan No: ███████

Borrower: BRIAN J GOODMAN

Data ID: ███

# BALLOON NOTE

## (FIXED RATE)

MIN: ████████████

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

December 26, 2006

CONCORD
[City]

NEW HAMPSHIRE
[State]

72 HALL ST
CONCORD, NEW HAMPSHIRE 03301
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$ 230,000.00** (this amount is called "Principal"), plus interest, to the order of Lender. Lender is AEGIS LENDING CORPORATION. I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **6.640%**.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on **February 1, 2007**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **January 1, 2037**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. BOX 422039, HOUSTON, TX 77242-2039 or at a different place if required by the Note Holder.

**MULTISTATE BALLOON FIXED RATE NOTE** - Single Family - FANNIE MAE UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna

Form 3260 1/01
*(Page 1 of 4 Pages)*

INITIALS: _[signature]_ _____

Loan No:▮                                                                                     Data ID:▮

**(B) Amount of Monthly Payments**
My monthly payment will be in the amount of U.S. **$ 1,369.56**.

**4. BORROWER'S RIGHT TO PREPAY**
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.
**I may prepay all or any part of the unpaid balance of the principal at any time, in which event Note Holder may, at its option and as permitted by law, if prepayment occurs within 3 years after the execution of this Note, assess a prepayment penalty on the amount in excess of 20 percent of the original loan amount that is prepaid in any 12-month period. The prepayment penalty shall be in an amount equal to 6 months' advance interest on the amount prepaid in excess of 20 percent of the original loan amount of this Note.**
If this Note is not in default, the Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.
By accepting partial payment of any payment, Note Holder does not waive the right to collect the remainder of such payment. Acceptance of any payment after maturity, or waiver of any breach or default of the terms of this Note shall not constitute a waiver of any later or other breach or default, and failure of Note Holder to exercise any of its rights shall not constitute waiver of such rights.

**5. LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**
**(A) Late Charges for Overdue Payments**
If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.
**(B) Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
**(C) Acceleration**
If I am in default, the Note Holder may without notice or demand, unless otherwise required by applicable law, require me to pay immediately the full amount of Principal that has not been paid and all interest that I owe on that amount.
**(D) No Waiver By Note Holder**
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
**(E) Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees. The Borrower may be awarded reasonable attorney's fees if the Borrower prevails in an action brought by the Lender or the Borrower. In addition, if the Borrower successfully asserts a partial defense, set-off or counterclaim to an action brought by the Lender, the court may withhold from the Lender the entire amount or such portion the court deems equitable.

**MULTISTATE BALLOON FIXED RATE NOTE** - Single Family - **FANNIE MAE UNIFORM INSTRUMENT**
Modified by Middleberg, Riddle & Gianna

Form 3260  1/01
(Page 2 of 4 Pages)

INITIALS: _____   _____

Loan No.  ▊▊▊▊▊▊▊                                          Data ID:  ▊▊▊

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of notice of acceleration, Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

## 11. ATTORNEYS' FEES

Pursuant to New Hampshire Revised Statutes Annotated § 361-C:2, in the event that Borrower shall prevail in (a) any action, suit or proceeding, brought by Lender, or (b) an action brought by Borrower, reasonable attorneys' fees shall be awarded to Borrower. Further, if Borrower shall successfully assert a partial defense or set-off, recoupment or counterclaim to an action brought by Lender, a court may withhold from Lender the entire amount or such portion of its attorneys' fees as the court shall consider equitable.

**MULTISTATE BALLOON FIXED RATE NOTE** - Single Family - **FANNIE MAE UNIFORM INSTRUMENT**
Modified by Middleberg, Riddle & Gianna

**Form 3260  1/01**
*(Page 3 of 4 Pages)*

INITIALS: ▊▊▊  _____

Loan No: ▮                                                    Data ID: ▮

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

................................................................(Seal)
BRIAN J GOODMAN —Borrower

[Sign Original Only]

PAY TO THE ORDER OF
AEGIS MORTGAGE CORPORATION
WITHOUT RECOURSE
AEGIS LENDING CORPORATION

TRYMEKA McCOY
ASSISTANT SECRETARY

PAY TO THE ORDER OF
U.S. Bank National *
WITHOUT RECOURSE
AEGIS MORTGAGE CORPORATION
BY
TRYMEKA McCOY
ASSISTANT SECRETARY

* Association, as Trustee
for the registered holders
of Bear Stearns Asset
Backed Securities I Trust
2007-HE4 Asset-Backed
Certificates, Series 2007-HE4

**MULTISTATE BALLOON FIXED RATE NOTE** - Single Family - FANNIE MAE UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna

Form 3260  1/01
(Page 4 of 4 Pages)

ALLONGE TO NOTE

Loan #: ▮▮▮▮▮▮▮
Borrower: BRIAN J GOODMAN
Date of Note: 12/26/2006
Loan Amount: $230,000.00
Property Address: 72 HALL ST, CONCORD, NEW HAMPSHIRE 03301
Original Lender: AEGIS LENDING CORPORATION

For value received, I hereby transfer, endorse and assign the within Note.

Pay to the order of

U.S. Bank NAtional Association, as trustee for the registered holders of the Bear
Stearns Asset Backed securities I Trust 2007-HE4 Asset Backed Certificates ,Series
2007-HE4, By Select Portfolio Servicing, Inc. As Attorney in Fact

By: _____
Name:  **LUDJIN DELGADO**
Title:  **DOCUMENT CONTROL OFFICER**

GAUTHIER & MacMARTIN, PLLC
321 NASHUA ST.
MILFORD, NH 03055

Doc#:
Book: 3053 Pages:1419 - 1436
03/18/2008   10:25AM

After Recording Return To:
AEGIS LENDING CORPORATION
ATTN LOAN SHIPPING, REG 7
P. O. BOX 84308
BATON ROUGE, LOUISIANNA 70884

Book 3053 Page 1419

——————————[Space Above This Line For Recording Data]——————————

## CONFIRMATORY MORTGAGE

**DEFINITIONS**          MIN

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated _____December 26, 2006_____ together with all Riders to this document.

(B) "Borrower"
Brian J. Goodman A Single Person

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is AEGIS LENDING CORPORATION
Lender is a Corporation
organized and existing under the laws of
Delaware
Lender's address is 10049 NORTH REIGER ROAD
BATON ROUGE, LOUISIANNA 70809
Lender is the mortgagee under this Security Instrument.
(E) "Note" means the promissory note signed by Borrower and dated _____December 26, 2006_____ .
The Note states that Borrower owes Lender
Two Hundred Thirty Thousand and 00/100
Dollars (U.S. $230,000.00 _____ ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
January 01, 2037 .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider        ☐ Condominium Rider            ☐ Second Home Rider
☑ Balloon Rider                ☐ Planned Unit Development Rider ☐ Other(s) [specify]_____
☐ 1-4 Family Rider             ☐ Biweekly Payment Rider

NEW HAMPSHIRE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3030      1/01
NH011MERS(0004)        PROFESSIONAL DOCUMENT SYSTEMS, INC. (603) 437-1541        (page 1 of 16 pages)



(I) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) **"Escrow Items"** means those items that are described in Section 3.

(M) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan; and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose Borrower does hereby mortgage, grant and convey to MERS (Solely as nominee for Lender and Lender's Successors and assigns) and assigns of MERS with mortgage

NEW HAMPSHIRE–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
NH012MERS(0004)          PROFESSIONAL DOCUMENT SYSTEMS, INC. (603) 437-1141

Form 3030          1/01
(page 2 of 16 pages)



covenants, and with power of sale, the following described property located in the
_____Registry of Deeds_____ of _____Merrimack County_____ :
[Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]


SEE SCHEDULE A ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE


which currently has the address of  72 Hall Street _____
                                                                [Street]
_____Concord_____ , New Hampshire   03301   ("Property Address"):
        [City]                                           [Zip Code]


TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided

NEW HAMPSHIRE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3030    1/01
NH013MERS(0004)        PROFESSIONAL DOCUMENT SYSTEMS, INC. (603) 437-1341       (page 3 of 16 pages)



any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower,

NEW HAMPSHIRE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3030     1/01
NH014FMM(0004)          PROFESSIONAL DOCUMENT SYSTEMS, INC. (603) 431-1541          (page 4 of 16 pages)



4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

NEW HAMPSHIRE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3030        1/01
NH016FMM(0004)        PROFESSIONAL DOCUMENT SYSTEMS, INC. (603) 437-1541        (page 6 of 16 pages)



All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the

Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position n a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available,

NEW HAMPSHIRE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT       Form 3030    1/01
NH018FMM(0004)       PROFESSIONAL DOCUMENT SYSTEMS, INC. (603) 437-1541       (page 8 of 16 pages)



Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a nonrefundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchase the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage Insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

NEW HAMPSHIRE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3030    1/01
NH019FMM(0004)      PROFESSIONAL DOCUMENT SYSTEMS, INC. (603) 433-1541    (page 9 of 16 pages)



In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

NEW HAMPSHIRE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3030        1/01
NH0110FMM(0004)          PROFESSIONAL DOCUMENT SYSTEMS, INC. (603) 417-1541                (page 10 of 16 pages)



**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail

NEW HAMPSHIRE -Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
NH0111FMM(0004)     PROFESSIONAL DOCUMENT SYSTEMS, INC. (603) 437-1141

Form 3030     1/01
(page 11 of 16 pages)



Book 3053 Page 1430

to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys'



fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.



Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

NEW HAMPSHIRE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3030    1/01
NH0114FMM(0004)      PROFESSIONAL DOCUMENT SYSTEMS, INC. (603) 437-1341      (page 14 of 16 pages)



Book 3053 Page 1433

**23. Discharge.** The Lender, within 60 days after this Security Instrument is satisfied and having reasonable charged tendered to the Lender, shall cause the discharge of this Security Instrument to be recorded in the registry of deeds where the property lies. The recording fees associated with the discharge of this Security Instrument may be charged to the Borrower, if the Borrower received written disclosure that such fees would be so charged. The Lender shall provide written confirmation of the discharge within the 60-day period to the payor of the final payment in satisfaction of this Security Instrument.

**24. Releases.** Borrower, and Borrower's spouse, if any, release all rights of homestead in the property and release all rights of curtesy and other interests in the Property.

**25. Attorney's Fees.** Pursuant to New Hampshire Revised Statutes Annotated § 361-C:2, in the event that Borrower shall prevail in (a) any action, suit or proceeding, brought by Lender, or (b) an action brought by Borrower, reasonable attorney's fees shall be awarded to Borrower. Further, if Borrower shall successfully assert a partial defense or set-off, recoupment or counterclaim to an action brought by Lender, a court may withhold from Lender the entire amount or such portion of its attorneys' fees as the court shall consider equitable.





NEW HAMPSHIRE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3030  1/01
NH0115FMM(0004)   PROFESSIONAL DOCUMENT SYSTEMS, INC. (601) 437-1341  (page 15 of 16 pages)

Book 3053 Page 1434

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____    _____ (Seal)
                            Brian J. Goodman          -Borrower

_____    _____ (Seal)
                                                      -Borrower

_____    _____ (Seal)
                                                      -Borrower

_____    _____ (Seal)
                                                      -Borrower

_____ [Space Below This Line for Acknowledgment] _____

State of New Hampshire,                  Hillsborough County ss:
The foregoing instrument was acknowledged before me this    December 26, 2006    by
                                                              [Date]
Brian J. Goodman                                          3-11-09
                                         (person acknowledging)

My Commission Expires:

EUGENE F. SULLIVAN III
Notary Public - New Hampshire
My Commission Expires September 6, 2009
NEW HAMPSHIRE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3030    1/01
NH0116FMM(0203)        PROFESSIONAL DOCUMENT SYSTEMS, INC. (603) 417-1541        (page 16 of 16 pages)

## SCHEDULE A

Three certain tracts or parcels of land, together with the buildings thereon, situate in the City of Concord, County of Merrimack and State of New Hampshire, further described and bounded as follows:

### TRACT I:

Beginning at the northeast corner of land now or formerly of William Hinds; thence westerly on land of said Hinds one hundred thirty-two (132) feet; thence northerly along Tract II sixty (60) feet to an iron stake; thence easterly on a line parallel to the first mentioned line, on land of said Hill, to Hall Street, a distance of one hundred thirty-two (132) feet; thence southerly on Hall Street sixty (60) feet to the point of beginning.

### TRACT II:

Beginning at the northwest corner of Tract I; thence running westerly on a continuation of the northerly line of Tract I about one hundred twenty-six (126) feet to an iron pin; thence southerly about sixty (60) feet to the northwest corner of land now or formerly of William L. Hinds; thence easterly about one hundred and twenty-six (126) feet along the line of said Hinds' land to the southwest corner of said Tract I; thence northerly about sixty (60) feet to the point of beginning.

Meaning and intending to describe and convey the same premises conveyed to the within Mortgagor by Deeds of Tina Crisafulli dated September 23, 1998 and recorded in the Merrimack County Registry of Deeds at Book 2121, Page 959 and dated January 12, 2000 and recorded in said Registry of Deeds at Book 2192, Page 726.

### TRACT III:

Beginning at the iron pin set at the southeast corner of a lot now or formerly of P.M. Carter Properties, LLC; thence turning and running westerly along the northerly boundary of land belonging to Brian Goodman to the westerly line of land now or formerly of P.M. Carter Properties, LLC; thence turning and running north along the westerly boundary of the property now or formerly of P.M. Carter Properties, LLC, a distance of twelve (12) feet to a point; thence turning and running easterly along a course parallel to the northerly boundary of property now or formerly of Brian J. Goodman, to a point on the easterly boundary of land now or formerly of P.M. Carter Properties, LLC, also being the westerly side of Hall Street; thence turning and running twelve (12) feet along the easterly line of the land now or formerly of P.M. Carter Properties, LLC and Hall Street, to the point of beginning.

Said parcel is more particularly shown on Exhibit 1 recorded in said Registry of Deeds at Book 3003, Page 1850. Meaning and intending to describe and convey the same premises awarded to the Mortgagor by Decree in the matter of Brian Goodman v. Carter, P.M. Properties, LLC et. als. Merrimack County Superior Court Docket ▓▓▓▓▓ recorded in said Registry of Deeds at Book 3003, Page 1847.

Book 3053 Page 1436

Together with a right of way over a certain tract or parcel of land located on the westerly side of Hall Street, City of Concord, County of Merrimack, and State of New Hampshire. Said right-of-way shall be for the purpose of flaring a driveway and shall be solely for the passage of pedestrians and motor vehicles and not for parking or any other purpose. This easement is more particularly bounded and described as follows:

Beginning at a point twelve (12) feet north of the iron pin set at the southeasterly corner of the Grantor's property and the northeasterly corner of the Grantee's property, also being along the westerly side of Hall Street; thence westerly along a course parallel with the northerly boundary of the Grantee's lot, a distance of ten (10) feet to a point; thence turning and running northeasterly to a point on the eastern property line of the Grantor's property, which is two (2) feet north of the point of beginning; thence turning and running two (2) feet along the easterly boundary of the Grantor and the westerly side of Hall Street, to the point of beginning.

Subject to all liens, easements, and encumbrances of record.

Meaning and intending to describe and convey the right-of-way conveyed to the within Mortgagor by Quitclaim Deed of P.M. Carter Properties, LLC dated April 18, 2006 and recorded in said Registry of Deeds at Book 2684, Page 1938.

Z:\Karen\Schedule A(x)\2007\Goodman, Schedule A.doc

MERRIMACK COUNTY RECORDS

_Kathi L. Guay_ .CPO, Register

Doc#: ▮
Book: 3143 Pages:0974 – 0975
07/14/2009   2:22PM

MCRD     Book 3143 Page 974

Prepared By: Maria Alvarez
Ocwen Loan Servicing, LLC
1661 Worthington Road, Suite 100
West Palm Beach, Florida, 33409
Phone Number ▮

## ASSIGNMENT OF MORTGAGE
## NEW HAMPSHIRE

This **ASSIGNMENT OF MORTGAGE** is made and entered into as of this 01ST day of AUGUST, 2007, from MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., whose address is 3300 SW 34 Avenue, Suite 101, Ocala, FL 34474, its successors and assigns, as nominee for AEGIS LENDING CORPORATION, its successors and assigns, ("Assignor) to **BANK OF AMERICA, NATIONAL ASSOCIATION AS SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2007-HE4 ASSET-BACKED CERTIFICATES, SERIES 2007-HE4,** whose address is c/o Ocwen Loan Servicing, LLC, 1661 Worthington Road, Suite 100, West Palm Beach, Florida, 33409, all its rights, title and interest in and to a certain mortgage duly recorded in the Office of the Register of Deeds of **MERRIMACK,** County, State of **NEW HAMPSHIRE,** as follows:

Mortgagor: BRIAN J. GOODMAN
Mortgagee: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ACTING SOLELY AS NOMINEE FOR AEGIS LENDING CORPORATION
Document Date: DECEMBER 26, 2006
Amount: $230,000.00
Date Recorded: MARCH 18, 2006
Instrument: 704212
Book/Volume/Docket/Liber: 3053
Page/Folio: 1419
Property Address: 72 HALL ST., CONCORD, NH

Together with any and all notes and obligations therein described or referred to, the debt respectively secured thereby and all sums of money due and to become due thereon, with interest thereon, and attorney's fees and all other charges.



MCRD    Book 3143 Page 975

This Assignment is made without recourse, representation or warranty.

IN WITNESS WHEREOF, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ACTING SOLELY AS NOMINEE FOR AEGIS LENDING CORPORATION, has hereunto set its name and corporate seal on MAY 28, 2009 by the hand of Scott Anderson, Vice President and duly authorized thereto by a by-law of the Bank.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
ACTING SOLELY AS NOMINEE FOR AEGIS LENDING
CORPORATION

By:
Name:  Kevin M. Jackson
Title:    Vice President

STATE OF FLORIDA
COUNTY OF PALM BEACH

This instrument was acknowledged before me on JUNE 16, 2009, by Kevin M. Jackson, the Vice President of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ACTING SOLELY AS NOMINEE FOR AEGIS LENDING CORPORATION, on behalf of the corporation. Scott Anderson is personally known to me.
Witness my Hand and Seal of Office, the day and year above written.

Notary Public, State of Florida

MIN: ███████████                    MERS Ph.#:  (888) 679 – 6377

Notary Public State of Florida
Johnna Miller
My Commission DD831187
Expires 10/16/2012

MERRIMACK COUNTY RECORDS
Kathi L. Guay, CPO, Register

MCRD Book 3345 Page 1120
Doc#
e-Filed  10/22/2012  10:43:14 AM
KATHI L. GUAY, CPO, REGISTER
MERRIMACK COUNTY REGISTRY OF DEEDS
  RECORDING        $    14.00
  SURCHARGE        $     2.00

MERRIMACK COUNTY RECORDS *Kathi L. Guay*, CPO, Register

Prepared By: Joe Simmons
When Recorded Mail To:
Ocwen Loan Servicing, LLC
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Phone Number

Attorney Code:

## ASSIGNMENT OF MORTGAGE
## NEW HAMPSHIRE

    This ASSIGNMENT OF MORTGAGE from BANK OF AMERICA, NATIONAL ASSOCIATION AS SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2007-HE4 ASSET-BACKED CERTIFICATES, SERIES 2007-HE4, whose address: c/o Ocwen Loan Servicing, LLC. 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409 ("Assignor") to U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2007-HE4 ASSET-BACKED CERTIFICATES, SERIES 2007-HE4, whose address is c/o Ocwen Loan Servicing, LLC. 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409 ("Assignee").

    For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Assignor does by these presents hereby grant, bargain, sell, transfer and set over unto the Assignee, its successors, transferees and assigns forever, all of the right, title and interest of said Assignor in and to the following instrument describing land therein, duly recorded in the Office of the Register of Deeds of MERRIMACK County, State of NEW HAMPSHIRE, as follows:

Mortgagor: BRIAN J. GOODMAN
Mortgagee: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ACTING SOLELY AS NOMINEE FOR AEGIS LENDING CORPORATION
Document Date: DECEMBER 26, 2006
Amount: $ 230,000.00
Date Recorded: MARCH 18, 2006
Instrument: 704212
Book/Volume/Docket/Liber: 3053
Page/Folio: 1419
Property Address: 72 HALL STREET, CONCORD, NH 03301

This Assignment is made without recourse, representation or warranty.

IN WITNESS WHEREOF, BANK OF AMERICA, NATIONAL ASSOCIATION AS SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2007-HE4 ASSET-BACKED CERTIFICATES, SERIES 2007-HE4has hereunto set its name and corporate seal on OCTOBER 15, 2012, by the hand of Leticia N. Arias, Contract Manager and duly authorized thereto by a by-law of the Company.

BANK OF AMERICA, NATIONAL ASSOCIATION AS SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2007-HE4 ASSET-BACKED CERTIFICATES, SERIES 2007-HE4

BY ITS ATTORNEY IN FACT
OCWEN LOAN SERVICING, LLC

By:
Name:  Leticia N. Arias
Title:  Contract Manager

STATE OF FLORIDA        )
COUNTY OF PALM BEACH    )

This instrument was acknowledged before me on OCTOBER 15, 2012, by Leticia N. Arias, Contract Manager at Ocwen Loan Servicing, LLC Attorney-in-Fact for BANK OF AMERICA, NATIONAL ASSOCIATION AS SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2007-HE4 ASSET-BACKED CERTIFICATES, SERIES 2007-HE4, on behalf of the company. Leticia N. Arias is personally known to me.

Witness my Hand and Seal of Office, the day and year above written.

Notary Public        Ariel Jaccoma
State of Florida

Notary Public State of Florida
Ariel Jaccoma
My Commission EE097248
Expires 05/25/2015

EFiled 202400011306 Recorded in Merrimack County, NH In the Records of Erica S Davis, Register
BK: 3864 PG: 2060 04/15/2024 1:06 PM RECORDING $15.00 SURCHARGE $22.00

Case: 25-10233-KB Doc #: 67-5 Filed: 08/28/25 Desc: Exhibit   Page 29 of 42

Recording Requested By:
Residential RealEstate Review

When Recorded Return To:

Residential RealEstate Review
Collateral Document Services
3217 S. Decker Lake Drive
Salt Lake City, UT 84119

---

### CORPORATE ASSIGNMENT OF MORTGAGE

**Merrimack, New Hampshire**
**Residential RealEstate Review#:** ███████

Date of Assignment: AUG 1 2 2024
Assignor: U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF BEAR
STEARNS ASSET BACKED SECURITIES I TRUST 2007-HE4 ASSET-BACKED CERTIFICATES, SERIES
2007-HE4 BY SELECT PORTFOLIO SERVICING, INC. AS ITS ATTORNEY IN FACT at C/O SELECT PORTFOLIO
SERVICING, INC. 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT 84119
Assignee: U.S. Bank Trust Company, National Association, as Trustee, as successor-in-interest to U.S. Bank
National Association, as successor Trustee to LaSalle Bank National Association, as Trustee for Bear Stearns Asset
Backed Securities I Trust 2007-HE4, Asset-Backed Certificates, Series 2007-HE4 at C/O SELECT PORTFOLIO
SERVICING, INC. 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT 84119

Executed By: BRIAN J. GOODMAN A SINGLE PERSON  To: MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. ("MERS") AS NOMINEE FOR AEGIS LENDING CORPORATION, ITS SUCCESSORS AND
ASSIGNS
Dated: 12-26-2006 Recorded: 03-18-2008 as Instrument No. 704212, Book/Reel/Liber 3053, Page/Folio 1419 in
the County of Merrimack, State of New Hampshire.

Property Address: 72 HALL STREET, CONCORD, NH 03301 in the municipality of CONCORD

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency
of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $230,000.00 with interest, secured thereby, and the full benefit of all
the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and
conveys unto the said Assignee, the Assignor's interest under the Mortgage.

   TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF BEAR STEARNS
ASSET BACKED SECURITIES I TRUST 2007-HE4 ASSET-BACKED CERTIFICATES, SERIES 2007-HE4 BY
SELECT PORTFOLIO SERVICING, INC. AS ITS ATTORNEY IN FACT
On ___AUG 1 2 2024___

By: _____  Mindy Sandoval
                          Document Control Officer
                          Document Control Officer

STATE OF Utah
COUNTY OF Salt Lake

On, AUG 1 2 2024_____, before me,      Shanda Swilor          , a Notary Public in
and for SALT LAKE in the State of UTAH, personally appeared
   Mindy Sandoval
   Document Control Officer_____, of U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE
FOR THE REGISTERED HOLDERS OF BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2007-HE4
ASSET-BACKED CERTIFICATES, SERIES 2007-HE4 BY SELECT PORTFOLIO SERVICING, INC. AS ITS
ATTORNEY IN FACT, personally known to me (or proved to me on the basis of satisfactory evidence) to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

Shanda Swilor



SHANDA SWILOR
Notary Public  State of Utah
My Commission Expires on:
February 07, 2026
Comm. Number: 722933

MERRIMACK COUNTY RECORDS *Kathi L. Guay* CPO, Register

*FED EX*
*ENV*
*LMTS*

**When recorded mail to:** ████████
First American Title
Loss Mitigation Title ██████████
P.O. Box 27670
Santa Ana, CA  92799
RE: GOODMAN - PROPERTY REPORT

_____ [Space Above This Line for Recording Data] _____

# LOAN MODIFICATION AGREEMENT

| | |
|---|---|
| Servicer: | Ocwen Loan Servicing, LLC |
| Original Mortgagor / Maker: | BRIAN J. GOODMAN |
| Marital Status: | SINGLE |
| Original Morgagee / Payee: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ACTING SOLELY AS NOMINEE FOR AEGIS LENDING CORPORATION |
| Original Amount: | $ 230,000.00 |
| Original Mortgage Date: | DECEMBER 26, 2006 |
| Date Recorded: | MARCH 18, 2008 |
| Reel / Book: | 3053          Page / Liber:  1419 |
| CRFN / Document/Instrument #: | ████████ |
| AP# / Parcel #: | |
| Property Address: | 72 HALL STREET, CONCORD, |
| City:  CONCORD | County:  MERRIMACK          State:   NEW HAMPSHIRE |

| | |
|---|---|
| Present Holder of the Note and Lien: | U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2007-HE4 ASSET-BACKED CERTIFICATES, SERIES 2007-HE4 |
| Holder's Mailing Address: (Including county) | c/o Ocwen Loan Servicing, LLC 5720 Premier Park Dr, West Palm Beach, FL 33407 Palm Beach County |

New Money: ████████ $ ████

LEGAL DESCRIPTION: SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

Registered Land (OH Only):      ☐ YES          ☐ NO
AFN# (OH Only):          _____

District (NYC Only):  _____  Section:  _____   Block:  _____     Lot:  _____

District (MA Only):  _____

Lot (DC Only):  _____     Square:  _____

## MODIFICATION AGREEMENT

     **THIS MODIFICATION AGREEMENT** (the "Modification") is made and entered into as of January 1, 2014 between *U.S. Bank National Association, as Trustee for the registered holders of Bear Stearns Asset Backed Securities I Trust 2007-HE4 Asset-Backed Certificates, Series 2007-HE4* ("Investor"), c/o Ocwen Loan Servicing, LLC ("OLS"), whose address is 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409 and Borrower Brian J. Goodman, ("Borrower" or "you") whose address is 72 Hall Street, Concord, NH 03301. The Modification is as follows:

## RECITALS

A.  On or about December 26, 2006, the predecessor of U.S. Bank National Association, as Trustee for the registered holders of Bear Stearns Asset Backed Securities I Trust 2007-HE4 Asset-Backed Certificates, Series 2007-HE4 ("Investor") loaned $230,000.00 (the "Loan"), which was evidenced by a Balloon Note dated December 26, 2006, payable to the order of Aegis Lending Corporation.

B.  The Original Note is secured by a Mortgage to Secure Debt dated December 26, 2006, which by accident or mistake, was not recorded with the Merrimack County Registry of Deeds after execution. A Confirmatory Mortgage was executed on March 11, 2008 and recorded among the official records of the County of Merrimack on March 18, 2008 as Document Number 704212, Book 3053, Page 1419. **LEGAL DESCRIPTION ATTACHED AS EXHIBIT "A"**

    Borrower specifically agrees that should there be any parcel of land associated and/or acquired with the real property commonly known as 72 Hall Street, Concord, NH 03301 as of the Effective Date of this Agreement, that is not described within the attached Exhibit A, that that parcel of land is to also be included in this legal description and the Borrower will work with U.S. Bank, as Trustee and/or Ocwen to correct and amend the property description described attached as Exhibit A to properly reflect the correct legal description.

C.  The Original Mortgage grants Mortgage Electronic Registration Systems, Inc., as a nominee for Lender and Lender's successors and assigns a security interest in the Property owned by you and described in the Original Mortgage and allows Mortgage Electronic Registration Systems, Inc., as a nominee for Lender and Lender's successors and assigns to enforce remedies, including foreclosure of the Property, upon occurrence of a default, including your failure to make payments as agreed under the Original Note.

D.  U.S. Bank National Association, as Trustee for the registered holders of Bear Stearns Asset Backed Securities I Trust 2007-HE4 Asset-Backed Certificates, Series 2007-HE4 ("Investor") is now the owner of the Original Note and Original Mortgage (the "Loan Documents") and you agree that the Loan Documents are the only agreements and documents now in effect with respect to the Loan. Any other understandings, agreements or arrangements, which may have existed pertaining to the Loan, are now terminated. **OLS and the Investor shall be collectively referred to as "Ocwen" for purposes of this Modification.**

E.  The parties have agreed that Ocwen shall refrain from exercising the rights and remedies granted to it by the loan Documents and, instead, agree to modify the terms of your obligations under the Loan Documents pursuant to the terms and conditions set forth in this Modification.

F.  Pursuant to the mutual agreement to modify the Loan Documents, and in consideration of the promises, conditions, and terms set forth below, Ocwen has agreed to adjust the repayment terms of the Original Note, and the total amount due with respect to the Original Note. Ocwen has also agreed to reinstate the Loan as current and not in default as of the Effective Date, as defined below.

## LOAN MODIFICATION

**NOW, THEREFORE,** in consideration of the foregoing recitals which you agree to be true and correct and a part of this Modification, you and Lender agree as follows:

1. <u>Validity of the Loan Documents</u>: Except as expressly modified by this Modification, the terms and conditions of the Loan Documents remain in full force and effect and the Original Mortgage shall continue to secure the Original Note and this Modification.

2. <u>The Effective Date:</u> This Modification is subject to clear title and will be effective on January 1, 2014, on condition that a clear and marketable title policy can be issued.

3. <u>Modification of Your Obligations</u>: The obligations under the Loan Documents are modified as follows:

   a. **New Principal Balance**: The new principal balance now owed with respect to the Loan shall be One Hundred Forty-Two Thousand Dollars and Zero Cents, ($142,000.00), (the "New Principal Balance").

   b. **Interest Rate**: From the Effective Date of this Modification, the interest on the unpaid New Principal Balance at an annual rate equal to 2.00% fixed for the first sixty (60) months. Thereafter, and continuing through the maturity date of the Loan, the interest on the unpaid New Principal Balance will be increased to an annual rate of 4.13% fixed.

   c. **Down Payment**: $1,085.44 due on December 2, 2013.

   d. **New Monthly Payment from Effective Date Through The First Sixty (60) Months**: The new <u>total</u> monthly payment amount will be One Thousand Eighty-Five Dollars and Forty-Four Cents ($1,085.44) for the first sixty (60) months. The itemized breakdown of the total monthly payment is as follows:

      i.   Principal and Interest portion of payment    = $ 640.46.
      ii.  Tax and Insurance portion of payment         = $ 444.98.

   e. **New Monthly Payment From the Sixty-First Month Through To Maturity**: The New monthly principal and interest payment after the first sixty (60) months, through the maturity date of the Loan, will be $763.22 (Seven Hundred Sixty-Three Dollars and Twenty-Two Cents), effective December 1, 2018. This amount does **not** include taxes and insurance payments, which shall be added to the monthly principal and interest payment at values then prevailing, thus creating a new total monthly payment after the first sixty (60) months.

   f. **Payment Term**: The first New Monthly Payment will be due on January 1, 2014, with all of your subsequent New Monthly Payments due on the first day of each month following this date and continuing until the maturity date on January 1, 2037, when your remaining New Principal Balance, as defined below, including any additional interest, charges, advances, and other fees and costs related to the Loan which Ocwen has not yet collected, will be due.

   g. **Late Charges**: In the event the New Monthly Payment has not been received within fifteen (15) days of the first day of the month when such New Monthly Payment is due, Borrower agrees to pay a late charge of five percent (5%) of the total New Monthly Payment due.

<div align="center">**Page 2 of 8**</div>

    h.    **Force Place Insurance:** If you fail to obtain insurance and Ocwen shall be required to force place insurance in order to protect its security interest, then the escrow portion of the total monthly payment may increase. Additionally, borrower(s) release Ocwen from any liability in connection with said force place insurance being inadequate as to the amount of coverage obtained by Ocwen.

    i.    **Clear Title Contingency:** Acceptance of the loan modification agreement is contingent upon clear title with respect to the subject property. Specifically, U.S. Bank National Association, as Trustee for the registered holders of Bear Stearns Asset Backed Securities I Trust 2007-HE4 Asset-Backed Certificates, Series 2007-HE4 shall be the senior lien holder with respect to the above-referenced property and there shall be no issues with respect to the marketability of title. If it is discovered at any time that title to the property is not clear, then Ocwen shall have the right to deem this Modification null and void as if it never existed and the parties shall be restored to their original positions as if this Modification never existed.

4.    <u>Right to Prepay</u>: Consistent with the original Note, Mortgage/Deed in Trust.

5.    <u>Escrow Account</u>: If the loan is non-escrowed, then the borrowers are independently responsible for the payment of taxes and insurance and are required to pay both their property taxes and their insurance directly to the appropriate entities. However, whether the loan is escrowed or non-escrowed, in the event the borrowers fail to keep current and pay either their taxes or any type of insurance required for the property either by State Law or by the Ocwen, then Ocwen may advance these amounts to protect its security interest and if necessary, increase the amount of the monthly mortgage payment in order to compensate for the escrow shortage which will occur by said advancement. Therefore, Ocwen is permitted to impose an escrow impound account upon the subject loan. Ocwen may at any time collect and hold funds in the escrow account in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrowers' escrow account under the federal Real Estate Settlement Procedures Act of 1974, as amended from time to time, 12 U.S.C. et seq ("RESPA"). Ocwen may estimate the amount of funds due for the escrow account on the basis of current data for any past due amounts and make reasonable estimates for expenditures of future escrow items and adjust Borrowers' monthly payment amount accordingly should it become necessary to do so in the event of non-payment of taxes and insurance. However, the remaining paragraphs of the original note and mortgage regarding payment of taxes and insurance still apply.

6.    <u>Insurance Requirements</u>: The insurance carrier providing the insurance shall be chosen by you subject Ocwen's approval which shall not be unreasonably withheld. All insurance policies and renewals shall Ocwen's loan number and include a standard mortgagee clause for the benefit of:

        U.S. Bank National Association, as Trustee for the registered holders of Bear Stearns Asset Backed Securities I Trust 2007-HE4 Asset-Backed Certificates, Series 2007-HE4
        c/o Ocwen Loan Servicing, LLC
        Its Successors and/or Assigns
        12001 Science Dr. – Suite 110
        Orlando, Florida 32826-2913
        Phone: 407-737-5141
        Fax: 407-737-6144

7.    <u>Additional Events of Default</u>: Without limiting the other events of default set forth in the Loan Documents, you will be in default under this Modification and under the Loan Documents upon the occurrence of any one or more of these events:

<div align="center">Page 3 of 8</div>

    a.   Any material representation or warranty made by you in the Loan Documents, this Modification, or any initial agreement proves to be false or misleading in any respect.

    b.   You fail to make the New Monthly Payments as required by this Modification.

    c.   You sell or convey any interest in the Property without Ocwen's prior written consent.

    d.   Breach of any of the terms or provisions of this Modification.

8.   <u>Consequences of Your Default</u>: If you default under this Modification or the Loan Documents after the Effective Date (your "Default"), Ocwen may, in addition to the remedies provided by the Loan Documents, subject only to applicable law, institute any foreclosure or collection proceedings without prejudice for having accepted any payments, including but not limited to the New Monthly Payments, under this Modification and exercise any of its rights and remedies against you under the Loan Documents and/or this Modification.

9.   <u>Your Representations and Warranties</u>: As a material condition to Ocwen's willingness to enter into this Modification, you represent and warrant the following facts:

    a.   That you are indebted to Ocwen pursuant to the terms of the Loan Documents and this Modification, that your Total Debt is accurately set forth in this Loan Modification, paragraphs 3 and 5, above, and that you have no claims, actions, causes of action, statute of limitations or other defenses, counterclaims, or setoffs of any kind, including any claims pursuant to the Federal Truth in Lending Act, which you can assert against **U.S. Bank National Association, as Trustee for the registered holders of Bear Stearns Asset Backed Securities I Trust 2007-HE4 Asset-Backed Certificates, Series 2007-HE4** in connection with the making, closing, administration, collection, or enforcement by **U.S. Bank National Association, as Trustee for the registered holders of Bear Stearns Asset Backed Securities I Trust 2007-HE4 Asset-Backed Certificates, Series 2007-HE4** of the Loan Documents, this Modification, or any related agreement at any time, past, present or future.

    b.   You represent and warrant that you have no intention to file or agree to any bankruptcy proceeding at any time after the Effective Date and that you believe the terms of this Modification are sufficient to allow you to comply with your obligations under the Loan Documents and this Modification. In the event that you are or become the subject of a bankruptcy proceeding, you consent to relief from any automatic stay which may be imposed and which would, otherwise, prevent from proceeding with foreclosure in the event you are in Default pursuant to the Loan Documents and/or this Modification.

    c.   You represent and warrant that all material statements you have made to Ocwen, whether written or oral, all financial information and releases you have provided to Ocwen regarding you or the Property, and all information provided pursuant to any initial agreement you may have signed with Ocwen, remain valid and were true as of the date made and as of the Effective Date.

    d.   That you understand that this Modification is legally binding and that it affects your rights. You have obtained, or have had the opportunity to obtain, independent legal counsel concerning the meaning and importance of this Modification. You further represent and warrant that you are signing this Modification voluntarily and with full understanding of its contents and meaning.

10. YOUR RELEASE OF OCWEN: IN THE EVENT THAT YOU HAVE ANY CLAIMS, ACTIONS OR CAUSES OF ACTION, STATUTE OF LIMITATIONS OR OTHER DEFENSES, COUNTERCLAIMS OR SETOFFS OF ANY KIND WHICH EXIST AS OF THE DATE OF THIS MODIFICATION, WHETHER KNOWN OR UNKNOWN TO YOU, WHICH YOU NOW OR HEREAFTER MAY ASSERT AGAINST OCWEN IN CONNECTION WITH THE MAKING, CLOSING, ADMINISTRATION, COLLECTION OR

THE ENFORCEMENT BY OCWEN OF THE LOAN DOCUMENTS, THIS MODIFICATION OR ANY OTHER RELATED AGREEMENTS, THEN BY EXECUTING THIS MODIFICATION YOU FOREVER IRREVOCABLY WAIVE AND RELINQUISH THEM. OCWEN, INCLUDING **U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2007-HE4 ASSET-BACKED CERTIFICATES, SERIES 2007-HE4** SHALL INCLUDE FOR THE PURPOSES OF THIS MODIFICATION, BUT SHALL NOT BE LIMITED TO INVESTOR'S PRESENT AND FORMER OFFICERS, DIRECTORS, EMPLOYEES, AGENTS, SERVICING AGENTS, ATTORNEYS AND ALL PRIOR AND SUBSEQUENT PARTIES IN INTEREST, INCLUDING BUT NOT LIMITED TO INVESTOR'S PREDECESSOR(S) IN INTEREST.

11. <u>Final Agreement</u>: This Modification may not be supplemented, changed, waived, discharged, eliminated, modified or omitted except by written document executed by both you and Ocwen. This Modification and the accompanying Settlement and Release Agreement constitutes the entire agreement between you and Ocwen and, supersedes all previous negotiations and discussions between you, Ocwen and/or Ocwen's predecessors in interest, and neither parole evidence nor any prior or other agreement shall be permitted to contradict or vary its terms. There are no promises, terms, conditions, or obligations other than those contained in this Modification.

12. <u>No Novation</u>: You expressly agree that this Modification is not a new loan from Ocwen but simply the modification of your existing obligations under the Loan Documents. Neither you nor Ocwen has any intention to extinguish or discharge the indebtedness or the liens evidenced by the Loan Documents.

13. <u>Choice of Law and Severability</u>: This Modification shall be governed by and construed under the laws of the State where the Property is located. If any portion, term or provision of this Modification is held by a court of competent jurisdiction to be illegal or in conflict with such law, the validity of the remaining portions, terms or provision of this Modification shall not be affected, and the rights and obligations of the parties shall be construed and enforced as if this Modification did not conflict with such law and/or did not contain the portion, term or provision held to be invalid.

14. <u>Successors</u>: This Modification shall bind the parties' respective successors, assigns, heirs and personal representatives. This Modification shall not be understood to limit in any way the right of Ocwen to sell, or otherwise convey, any interest in the subject obligation to another, provided that such subsequent party in interest is also bound as Ocwen to the terms of this Modification.

15. <u>References</u>: All references to the singular shall include the plural and all references to one gender herein shall include both genders.

16. <u>Executed in Counterparts</u>: This Modification may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document.

17. <u>No Trial By Jury</u>: BY EXECUTING THIS MODIFICATION, YOU IRREVOCABLY WAIVE ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS MODIFICATION AND ANY RELATED AGREEMENTS OR DOCUMENTS OR TRANSACTIONS CONTEMPLATED IN THIS MODIFICATION.

18. <u>Payment Instructions</u>: All payments, unless you are notified by Ocwen in writing of a different address, shall be made to Ocwen at the following address:

> Ocwen Loan Servicing, LLC
> P.O. Box 6440
> Carol Stream, IL 60197-6440

Such payments are to be effected by you, by instructing your bank to make automatic transfer of funds from your checking account on the 5th day of each month.

19. <u>Notices</u>:  All notices should be sent to:

    If to Ocwen:

        U.S. Bank National Association, as Trustee for the registered holders of Bear Stearns Asset Backed Securities I Trust 2007-HE4 Asset-Backed Certificates, Series 2007-HE4
C/o Ocwen Loan Servicing, LLC
12001 Science Dr. – Suite 110
Orlando, Florida  32826-2913
Phone: 407-737-5141
Fax: 407-737-6144

    If to Borrowers:

        Brian J. Goodman
40 Hall Street
Concord, NH 03301

20. <u>Time of the Essence</u>:  Time, and Lender's unimpaired security interest in the Property, shall be of the essence as to your obligations under this Modification.

WITNESS the following signatures and seals as of the day first written above.

[THE REMAINDER OF THIS PAGE LEFT INTENTIONALLY BLANK]

[SIGNATURES ON THE FOLLOWING PAGE]

U.S. Bank National Association, as Trustee for the registered holders
of Bear Stearns Asset Backed Securities I Trust 2007-HE4 Asset-
Backed Certificates, Series 2007-HE4 by its attorney-in-fact, Ocwen
Loan Servicing, LLC

By: _____
Name: _____
                 Joe N Nguyen
Title: _____
                Senior Counsel

STATE OF  Pa          )
                     ) ss.
COUNTY OF  Montgomery )

     On  Dec 9          , 2013, before me, Carol Lynne Bonello Notary Public in and for said
County and State, personally appeared  Joe Nhuyen           , who is "CIRCLE ONE" personally
known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the
within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by
his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the
instrument.

[NOTARY SEAL]

My Commission Expires: _____ Notary Public

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Carol Lynne Bonello, Notary Public
Upper Dublin Twp., Montgomery County
[SIGNATURES CONTINUED ON THE FOLLOWING PAGE]
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

Page 7 of 8

Brian J. Goodman

STATE OF New Hampshire )
                         ) ss.
COUNTY OF Merrimack )

On __1/2/2_____ , 2013, before me, Eugene F. Sullivan III , a Notary Public in and for said County and State, personally appeared _Brian Goodman_____ , who is "CIRCLE ONE" personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

My Commission Expires:

[NOTARY SEAL]

Notary Public

EUGENE F. SULLIVAN III
Notary Public - New Hampshire
My Commission Expires September 9, 2014

When recorded mail to:
Ocwen Loan Servicing, LLC
12001 Science Dr., Suite 110
Orlando, FL 32826-2913

Loan No. _____  Parcel/ Tax ID # _____

Page 8 of 8

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR
THE REGISTERED HOLDERS OF BEAR STEARNS ASSET
BACKED SECURITIES I TRUST 2007-HE4 ASSET-BACKED
CERTIFICATES, SERIES 2007-HE4
By it's attorney in fact Ocwen Loan Servicing, LLC

By:  Elsie Ramirez
Contract Management Modifications Coordinator
Date:  13-January-2014

Power of attorney recorded on          , County
State          , Book:          Page
Instrument #
(If power of attorney recorded information above is not
completed, please see attached Power of Attorney)

WITNESSES:

Felicia Perry

Cord Moss

STATE OF Florida }
COUNTY OF Palm Beach }
    On 13-January-2014, before me, the undersigned Notary Public, personally
appeared Elsie Ramirez, Contract Management Modifications Coordinator, of Ocwen Loan
Servicing, LLC, personally known to me or proved to me on the basis of satisfactory
evidence to be the individual whose name is subscribed to the within instrument and
acknowledged to me that he/she executed the same in his/her capacity, that by his/her
signature on the instrument, the individual(s) or person upon behalf of which the
individual acted, executed the instrument, and that such individual made such
appearance before the undersigned in the county of Palm Beach, State of Florida.

Notary Public State of Florida
Brian Ader
My Commission FF 045832
Expires 08/15/2017

Witness my hand and official seal.

Notary –          State of Florida
                  County of Palm Beach

Prepared by:          Cord Moss

Brian Ader

**EXHIBIT "A"** *

TWENTY-SIX FEET ALONG THE LINE OF SAID HINDS' LAND TO THE SOUTHWEST CORNER OF SAID TRACT 1; THENCE NORTHERLY ABOUT SIXTY FEET TO THE POINT OF BEGINNING.

MEANING AND INTENDING TO DESCRIBE AND CONVEY ALL OF THE GRANTOR'S REMAINING UNDIVIDED ONE-HALF INTEREST AS A TENANT IN COMMON IN ALL AND THE SAME PREMISES AS CONVEYED TO TINA CRISAFULLI BY FIDUCIARY WHICH DEED IS DATED SEPTEMBER 3, 1998 AND WAS RECORDED ON SEPTEMBER 8, 1998 AT THE MERRIMACK COUNTY REGISTRY OF DEEDS AT BOOK 21126, PAGE 1145. THIS CONVEYANCE IS SUBJECT TO A FIRST MORTGAGE GIVEN BY TINA CRISAFULLI TO ASSURANCE MORTGAGE CORP. OF AMERICA, DATED SEPTEMBER 3, 1998, AND RECORDED ON SEPTEMBER 8, 1998 AT THE MERRIMACK COUNTY REGISTRY OF DEEDS AT BOOK 2116, PAGE 1147. THE GRANTOR HAS PREVIOUSLY GRANTED AN UNDIVIDED ONE-HALF INTEREST IN ALL AND THE SAME PREMISES TO SAID BRIAN GOODMAN BY QUITCLAIM DEED DATED SEPTEMBER 23, 1998, RECORDED AT BOOK 2121 PAGE 959 IN THE MERRIMACK COUNTY REGISTRY OF DEEDS OF OCTOBER 7, 1998.

* City of Concord

## SCHEDULE A

Three certain tracts or parcels of land, together with the buildings thereon, situate in the City of Concord, County of Merrimack and State of New Hampshire, further described and bounded as follows:

**TRACT I:**

Beginning at the northeast corner of land now or formerly of William Hinds; thence westerly on land of said Hinds one hundred thirty-two (132) feet; thence northerly along Tract II sixty (60) feet to an iron stake; thence easterly on a line parallel to the first mentioned line, on land of said Hill, to Hall Street, a distance of one hundred thirty-two (132) feet; thence southerly on Hall Street sixty (60) feet to the point of beginning.

**TRACT II:**

Beginning at the northwest corner of Tract I; thence running westerly on a continuation of the northerly line of Tract I about one hundred twenty-six (126) feet to an iron pin; thence southerly about sixty (60) feet to the northwest corner of land now or formerly of William L. Hinds; thence easterly about one hundred and twenty-six (126) feet along the line of said Hinds' land to the southwest corner of said Tract I; thence northerly about sixty (60) feet to the point of beginning.

Meaning and intending to describe and convey the same premises conveyed to the within Mortgagor by Deeds of Tina Crisafulli dated September 23, 1998 and recorded in the Merrimack County Registry of Deeds at Book 2121, Page 959 and dated January 12, 2000 and recorded in said Registry of Deeds at Book 2192, Page 726.

**TRACT III:**

Beginning at the iron pin set at the southeast corner of a lot now or formerly of P.M. Carter Properties, LLC; thence turning and running westerly along the northerly boundary of land belonging to Brian Goodman to the westerly line of land now or formerly of P.M. Carter Properties, LLC; thence turning and running north along the westerly boundary of the property now or formerly of P.M. Carter Properties, LLC, a distance of twelve (12) feet to a point; thence turning and running easterly along a course parallel to the northerly boundary of property now or formerly of Brian J. Goodman, to a point on the easterly boundary of land now or formerly of P.M. Carter Properties, LLC, also being the westerly side of Hall Street; thence turning and running twelve (12) feet along the easterly line of the land now or formerly of P.M. Carter Properties, LLC and Hall Street, to the point of beginning.

Said parcel is more particularly shown on Exhibit 1 recorded in said Registry of Deeds at Book 3003, Page 1850. Meaning and intending to describe and convey the same premises awarded to the Mortgagor by Decree in the matter of Brian Goodman v. Carter, P.M. Properties, LLC et. als. Merrimack County Superior Court Docket ▮▮▮▮ recorded in said Registry of Deeds at Book 3003, Page 1847.

Together with a right of way over a certain tract or parcel of land located on the westerly side of Hall Street, City of Concord, County of Merrimack, and State of New Hampshire. Said right-of-way shall be for the purpose of flaring a driveway and shall be solely for the passage of pedestrians and motor vehicles and not for parking or any other purpose. This easement is more particularly bounded and described as follows:

Beginning at a point twelve (12) feet north of the iron pin set at the southeasterly corner of the Grantor's property and the northeasterly corner of the Grantee's property, also being along the westerly side of Hall Street; thence westerly along a course parallel with the northerly boundary of the Grantee's lot, a distance of ten (10) feet to a point; thence turning and running northeasterly to a point on the eastern property line of the Grantor's property, which is two (2) feet north of the point of beginning; thence turning and running two (2) feet along the easterly boundary of the Grantor and the westerly side of Hall Street, to the point of beginning.

Subject to all liens, easements, and encumbrances of record.

Meaning and intending to describe and convey the right-of-way conveyed to the within Mortgagor by Quitclaim Deed of P.M. Carter Properties, LLC dated April 18, 2006 and recorded in said Registry of Deeds at Book 2684, Page 1938.

Z:\Karen\Schedule A(s)\2007\Goodman. Schedule A.doc