## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

|  |  |
|---|---|
| In Re: ) | Case No. 25-10233-KB |
| ) | |
| Brian J. Goodman, Sr. ) | Chapter 13 |
| Debtor ) | |
| ) | December 30, 2025 |
| ) | |

## MOTION OF SHELLPOINT MORTGAGE SERVICING AS SERVICER FOR JP MORGAN CHASE BANK, NATIONAL ASSOCATION FOR RELIEF FROM THE AUTOMATIC STAY  PURSUANT TO 362(d)(1) AND CO-DEBTOR RELIEF PURSUANT TO § 1301(c)AND FOR LEAVE TO FORECLOSE MORTGAGE

Shellpoint Mortgage Servicing as Servicer for JP Morgan Chase Bank National Association (hereinafter referred to as the "Movant"), a secured creditor, hereby moves this Court for Relief from the Automatic Stay pursuant to Bankruptcy Rules 4001 and 9014 and 11 U.S.C. Section 362(d) (1) and (4) and Co-Debtor relief pursuant to §1301(c) and for leave to foreclose a certain mortgage encumbering the property owned by the Debtors, known as 33-35 Pinecrest Circle, Concord, NH 03301. In support of this Motion, Movant states as follows:

1.      This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. 1334 and 28 U.S.C.157(b)(2)(G).  This case relates to a case under Title 11 of the United States Code (the "Bankruptcy Code").  This proceeding is a "core" proceeding as this term is defined in the Code.

2.      On  April 11, 2025 Brian J. Goodman, Sr. (hereinafter referred to as the "Debtor") filed a voluntary Chapter 13 Petition in Bankruptcy.  A Chapter 13 Plan has not been confirmed.

3.      Movant is the current holder of a certain mortgage given by the Debtor to Mortgage

Electronic Registration Systems, Inc. as nominee for First Magnus Financial Corporation. in the original principal amount of $231,000.00 dated June 6, 2007 and recorded at Merrimack County Registry of Deeds in Book 2994, Page 0871 (the "Mortgage"). A copy of the Mortgage is attached hereto as Exhibit A.

4.      The Mortgage secures a promissory note of even date and original principal amount given by Debtor to First Magnus Financial Corporation. (the "Note") of which Movant is the current holder.  A copy of the Note is attached hereto as Exhibit B.

5.      Mortgage Electronic Registration Systems, Inc. as nominee for First Magnus Financial Corporation. assigned the Mortgage to Bank of America, N.A. as successor by merger to BAC Home Loans Servicing LP fka Countrywide Home Loans Servicing, LP by assignment dated May 14, 2012 and recorded at Merrimack County Registry of Deeds in Book 3314, Page 1569, a copy of which is attached hereto as Exhibit C.

6.      Bank of America, N.A. assigned the Mortgage to Federal National Mortgage Association dated October 6, 2012 and recorded at Merrimack County Registry of Deeds in Book 3344, Page 1492, a copy of which is attached hereto as Exhibit D.

7.      Federal National Mortgage Association assigned the Mortgage to US Bank Trust National Association, Not in its Individual Capacity but Solely as Owner Trustee for VRMTG Asset Trust dated October 1, 2021 and recorded at Merrimack County Registry of Deeds in Book 3795, Page 265, a copy of which is attached hereto as Exhibit E.

8.      US Bank Trust National Association, Not in its Individual Capacity but Solely as Owner Trustee for VRMTG Asset Trust assigned the Mortgage to JPMorgan Chase Bank, N.A. dated May 30, 2025 and recorded at Merrimack County Registry of Deeds in Book 3892, Page 1026, a copy of which is attached hereto as Exhibit F. The current loan servicer for the Movant is Shellpoint Mortgage Servicing.

9.     The Mortgage encumbers real property known as 33-35 Pinecrest Circle, Concord, New Hampshire 03301.(hereinafter referred to as the "Property").  Copies of the Mortgage and Note are attached hereto as Exhibits "A" and "B" respectively.  The Mortgage is in first lien position.  Aside from the Property, there is no other collateral securing the obligation to Movant.

10.     On or about March 21, 2025 the Debtor transferred his ownership in the property to Fosterville Properties, LLC by way of a Warranty Deed recorded at Merrimack County Registry of Deeds in Book 3884, Page 2104 a copy of which is attached hereto as Exhibit G.

11.     The Debtors have defaulted on the Note and Mortgage by failing to make post-petition payments to Movant. As of December 1, 2025, the balance due Movant on the Note was approximately $284,850.88 (may not include negative escrow balances or recent escrow advances).  The full amount of the Movant's claim together with allowable post-petition interest, reasonable attorney fees, court costs, and other recoverable expenses is secured by the Mortgage.

12.     NewRez LLC dba Shellpoint Mortgage Servicing services the underlying mortgage loan and note for the property referenced in this motion for Movant.  In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant. Movant, directly or through an agent, has possession of the Note.  The Note is endorsed in blank.  Movant is the beneficiary or the assignee of the Deed of Trust.

13.     According to the Debtors' Schedules, the fair market value of the Property is Listed only in Section D. of the Debtor's schedules as $348,000.00.  Accepting the Debtors' valuation for purposes of this Motion only, the liquidation value of the Property is $329,600.00 based upon a usual and customary broker's commission of $17,400.00 (5% of stated fair market value), deed stamps of $500.00 (seller's one-half), and $500.00 in miscellaneous estimated closing costs.

14.     As of December 1, Movant has not received any post-petition mortgage payments from the Debtors. The current monthly payment is $1,776.39, subject to such subsequent adjustment as may be specified in the Note.

15.     As of December 1, 2025, the Debtors owed Movant a total post-petition arrearage of $15,760.12  calculated as follows:

8 monthly payments (5/1/2025-12/1/2025) at $1,776.39/mo.        $14,211.12

Bankruptcy attorneys fees and filing fees to be incurred          $1,549.00

---

**Total Post-Petition Arrearage:**                                 **$15,760.12**

16.     The pre-petition arrearage owed to the Movant as of the filing date of the petition was $68,052.16.

17.     In addition to the Mortgage to Movant, there are outstanding liens on the Property as follows:

None

18.     Movant is entitled to Relief from the Automatic Stay for cause pursuant to Section 362(d)(1) of the Code in as much as the Debtors have failed to make post-petition payments to the Movant in violation of the proposed Plan and of the terms of the Note and Mortgage.

19.     Movant is entitled to Relief from the Co-Debtor Stay as Fosterville Properties, LLC is the owner of the property and is a non-filing co-Debtor.

20.     Movant is entitled to Relief from the Automatic Stay for cause pursuant to Section 362(d)(4) of the Code in as much as the Debtor filed the petition as part of a scheme to delay, hinder, or defraud creditors that involved a transfer of all of his ownership in the Property *without* the consent of the secured Creditor. Moreover, this is the Debtor's second bankruptcy

filing within 12 months.

WHEREFORE, Movant requests that this Honorable Court:

(a)     Grant Movant Relief from the Automatic Stay pursuant to 11 U.S.C. Section 362(d) and for leave to Foreclose Mortgage, allowing Movant, its successors or assigns to foreclose said mortgage (including, at its sole option, leave to accept a deed-in-lieu of foreclosure from the Debtors, their heirs, successors, assigns or transferees); and for it or a third party purchaser to prosecute summary process proceedings to evict any persons residing in the Property;

(b)     In the alternative, order the Debtors to provide Movant with adequate protection of its claim; and/or

(c)     Grant such other Relief as this Honorable Court may deem just.

  /s/  Jennifer L. Joubert
Jennifer L. Joubert (B.B.O. No. 07847)
jjoubert@bglaw.com
Barton Gilman LLP
One Liberty Square, Fourth Floor
Boston, MA  02109
T:  617.654.8200 | F:  617.482.5350

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

|  |  |
|---|---|
| In Re: ) | Case No. 25-10233-KB |
| ) | |
| Brian J. Goodman, Sr. ) | Chapter 13 |
| Debtor ) | [DATE] |
| ) | |

## WORKSHEET COMPLETED BY THE MORTGAGEE/SERVICER IN SUPPORT OF MOTION FOR RELIEF FROM STAY INVOLVING RESIDENTIAL REAL PROPERTY

I, _Saroth Norn_ in my capacity as _Bankruptcy Case Manager_ for _New Rez LLC d/b/a Shellpoint Mortgage Servicing_ do hereby declare:

### BACKGROUND INFORMATION

| 1. | Address or general description of the real property that is the subject of this motion | 33-35 Pinecrest Circle, Concord, NH 03301 |
|---|---|---|
| 2. | Name and address of original mortgagee | First Magnus Financial Corporation, 603 North Wilmot Road, Tucson, AZ 85711 |
| 3. | Dates of the note and mortgage | June 6, 2007 |
| 4. | If movant is different from the original mortgagee, the status of movant (e.g., holder, assignee, or servicing agent) | JP Morgan Chase Bank National Association, LLC-holder of the note and mortgage by assignment of mortgage |
| 5. | Current address of movant | NewRez LLC d/b/a Shellpoint Mortgage Servicing, 55 Beattie Place, Suite 500, Greenville, SC 29601 |
| 6. | Postpetition payment address of movant if different from address in paragraph 5 above | NewRez LLC d/b/a Shellpoint Mortgage Servicing, PO Box 650840, Dallas, TX 75265-0840 |
| 7. | Brief statement of movant's standing (e.g., first mortgagee, second mortgagee, assignee, servicing agent) | First Mortgagee |

**DEBT/VALUE REPRESENTATIONS**

| 8. | Total indebtedness of debtor to movant at the time of filing the motion. This amount may not be relied upon as a "payoff" quotation. | $284,850.88 |
|---|---|---|
| 9. | Movant's estimated market value of the real property | $348,000.00 |
| 10. | Source of estimated valuation | Debtors schedules |

**STATUS OF DEBT AS OF THE PETITION DATE (CH. 13) OR
MOTION FOR RELIEF FILING DATE (CH. 7)**

| 11. | Total prepetition indebtedness of debtor to movant as of petition filing date (ch. 13) OR total contractual debt owed (ch. 7) | $269,892.52 |
|---|---|---|
| A. | Amount of principal | $174,231.71 |
| B. | Amount of interest | $20,517.89 |
| C. | Amount of escrow (taxes and insurance) | $31,131.53 |
| D. | Amount of forced placed insurance | $0.00 |
| E. | Amount of attorney's fees incurred prepetition that have been or will be charged to the debtor | $3706.00 |
| F. | Amount of prepetition late fees, if any, billed to debtor | $122.55 |
| G. | Itemize any additional prepetition fees or costs charged to the debtor's account and not listed above, including inspection fees, valuation fees, real estate taxes, etc. A separate exhibit may be attached to this worksheet. If so, it is marked Exhibit. | A. $38,566.23 (deferred principal) B. $278 (property inspection) C. $138.61 (title, mailing, court fees) D. $ |
| 12. | Number of payments in arrears on the petition date | 34 |
| 13. | Total amount of prepetition arrearage | $68,052.16 |
| 14. | Contractual interest rate. If interest rate is (or was) adjustable, please list the rate(s) and date(s) the rate(s) was/were in effect. A separate exhibit may be attached to this worksheet. If so, it is marked Exhibit _____. | 4.00% |

**STATUS OF DEFAULT AS OF DECEMBER 1, 2025**

| 15. | Amount of monthly payment (including principal, interest, and escrow) | $1,776.39 |
|---|---|---|
| 16. | Date last payment was received _____ | No post petition payments received |

| 17. | Alleged number of postpetition or contractual payments due postpetition from filing of petition through payment due on December 1, 2025 | 8 |
|---|---|---|
| 18. | Number of payments in arrears as of above date | 8 |
| 19. | Please list below all contractual payments due and all payments made since date of filing: | |

| Payments Due Since Date of Filing | |
|---|---|
| Date Due | Amount Due |
| 05/01/2025 | $1776.39 |
| 06/01/2025 | $1776.39 |
| 7/01/2025 | $1776.39 |
| 08/01/2025 | $1776.39 |
| 09/01/2025 | $1776.39 |
| 10/01/2025 | $1776.39 |
| 11/01/2025 | $1776.39 |
| 12/01/2025 | $1776.39 |
| Payments Made Since Date of Filing | |
| Date Received | Amount Paid |
| n/a | $0 |
| | |
| | |

| 20. | Amount of movant's attorney's fees charged or to be incurred to the debtor for the preparation, filing, and prosecution of this motion | $1350 | |
|---|---|---|---|
| 21. | Amount of filing fee for this motion | $199 | |
| 22. | Itemize amount and date of charge for any additional postpetition or contractual fees or costs charged or to be charged to the debtor's account and not listed above, including inspection fees, valuation fees, insurance, real estate taxes, attorney's fees to be incurred  etc.  A separate exhibit may be attached to this worksheet.  If so, it is marked Exhibit _____. | Amount | Date |
| | | A. $2250.00 B. $ C. $ D. $ | 10/09/25 |
| 23. | Sum held in suspense by movant in connection with this contract, if applicable | Credit of $0.00 | |
| 24. | Total amount of postpetition or contractual arrearage | $18,010.12 | |

**REQUIRED ATTACHMENTS**

The following documents are attached to this worksheet in support of the motion and marked as exhibits:

*(1)* Copies of documents showing movant's interest in the subject property (e.g., a complete and legible copy of the promissory note or other debt instrument together with a complete and legible copy of the mortgage and any assignment in the chain from the original mortgagee to the movant), which are marked as Exhibits A-F

*(2)* Copies of documents showing proof of standing to bring this motion for relief if different than the above, which are marked as Exhibits A-F.

## CERTIFICATION FOR BUSINESS RECORDS

The information provided in this worksheet and/or any exhibits attached to this worksheet (other than the transactional documents attached as required by paragraphs *(1)* and *(2)* immediately above) is derived from records that *(a)* were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters; *(b)* were kept in the course of the regularly conducted activity; and *(c)* were made by the regularly conducted activity as a regular practice.

Further, the copies of any transactional documents attached to this worksheet or motion, as required by paragraphs *(1)* and *(2)* immediately above, are true and accurate copies of the original documents.

**DECLARATION**

I, ____Saroth Norn____, in my capacity as ___Bankruptcy Case Manager___ of New Rez LLC d/b/a Shellpoint Mortgage Servicing as servicer for  JP Morgan Chase Bank, National Association, hereby declare pursuant to 28 U.S.C. § 1746 under penalty of perjury that the foregoing is true and correct based on personal knowledge of the movant's books and business records.

Executed at ____Tempe____ in, ___Arizona___ on this __18__ day of ___December___, 2025

Signature
Saroth norn
Print Name
Bankruptcy Case Manager
Title
New Rez LLC d/b/a Shellpoint Mortgage
Servicing as Servicer for JP Morgan Chase
Bank, National Association
Movant
Address PO Box 650840
Dallas, TX 75265-0840

**REPRESENTATIONS REGARDING OTHER LIENS ATTACHING TO THE PROPERTY**

I, _____Saroth Norn_____ as _Bankruptcy Case Manager_ for ____New Rez LLC d/b/a Shellpoint Mortgage Servicing____ ], do hereby declare:

| Names of Senior Lienholder | Amount Due | Source of Information (e.g., debtor's schedules, public records, other) |
|---|---|---|
| N/A | $0 | |
| | $ | |
| | $ | |
| Movant's lien | $ | |
| Names of Junior Lienholder | Amount Due | Source of Information (e.g., debtor's schedules, public records, other) |
| N/A | $0 | |
| | $ | |
| | $ | |

Signature
Saroth Norn
Print Name
Bankruptcy Case Manager
Title
New Rez LLC d/b/a Shellpoint Mortgage
Servicing as servicer for JPMorgan Chase
Bank, National Association
Movant
Address  PO Box 650840
                Dallas, TX 75265-0840

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

|  |  |  |
|---|---|---|
| In Re: | ) | Case No. 25-10233-KB |
|  | ) | Chapter 13 |
| Brian J. Goodman, Sr. | ) |  |
| Debtor | ) | December 30, 2025 |
|  | ) |  |

## STATEMENT OF PARENT COMPANIES AND PUBLIC COMPANIES

In compliance with Administrative Order 1074-1, JP Morgan Chase Bank National Association hereby states to the best of the undersigned's knowledge as follows:

Parent Companies of the Movant: None
Publicly-held Companies that own 10% or more of the Movant:             None

/s/ Jennifer L. Joubert

Jennifer L. Joubert (B.B.O. No. 07847)
jjoubert@bglaw.com
Barton Gilman LLP
One Liberty Square, Fourth Floor
Boston, MA 02109
T: 617.654.8200 | F: 617.482.5350

Dated:  December 30, 2025

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

|  |  |
|---|---|
| In Re: ) | Case No. 25-10233-KB |
| ) | |
| ) | Chapter 13 |
| Brian J. Goodman, Sr. ) | |
| Debtor ) | December 30, 2025 |
| ) | |

### AFFIDAVIT OF DEBTORS' MILITARY STATUS

I, Jennifer Joubert, Esquire hereby state that, based on the information provided by the Department of Defense Manpower Data Center website, the Debtors are not in military service as defined in the Service Members Civil Relief Act of 2003 (SCRA).

Sworn under the pains and penalties of perjury this December 30, 2025

 /s/  Jennifer L. Joubert
Jennifer L. Joubert (B.B.O. No. 07847)
jjoubert@bglaw.com
Barton Gilman LLP
One Liberty Square, Fourth Floor
Boston, MA  02109
T:  617.654.8200 | F:  617.482.5350

Dated:    December 30, 2025

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

|  |  |  |
|---|---|---|
| | ) | Case No. 25-10233-KB |
| In Re: | ) | |
| | ) | Chapter 13 |
| Brian J. Goodman, Sr. | ) | |
| Debtor | ) | December 30, 2025 |
| | ) | |

### NOTICE OF HEARING

Please take notice that on **January 30, 2026 at 10:00A.M.**, movant Nationstar Mortgage, LLC as servicer for JP Morgan will appear before the Hon. Kimberly Bacher, or any judge that may be sitting in that judge's place, at **either** the United States Bankruptcy Court, Courtroom A, Warren B. Rudman U.S. Courthouse, 55 Pleasant Street, Concord, New Hampshire, or via Zoom as described below, and present the Motion for Relief.

**To appear by Zoom via video, go to this link: https://www.zoomgov.com and then enter the Meeting ID and Passcode listed below.**

**To appear by Zoom using a telephone, call Zoom for Government at 1-646-828-7666 or 1-669-254-5252 and then enter the Meeting ID and Passcode listed below.**

**The Meeting ID for this hearing is 160 462 2499, and the Passcode is 760398. The Meeting ID and Passcode can also be found on the court's website.**

**YOUR RIGHTS MAY BE AFFECTED.  You should read this notice and the motion carefully and discuss it with your attorney.**  If you do not have an attorney, you may wish to consult one.  If you have no objection to the motion, no action is required by you.  If you do object to the relief sought, or if you wish to be heard, you must file a written objection with the Clerk, United States Bankruptcy Court, Warren B. Rudman U.S. Courthouse, 55 Pleasant Street, Room 200, Concord, NH 03301 on or before **January 23, 2026** which is the hearing date minus seven (7) days].

A copy of your objection or response must be mailed or delivered to the undersigned filer at the address set forth below, the case trustee, the United States Trustee, and a certificate of such action must be filed with the clerk.  If you file an objection or response, you must also appear at the hearing on the date and time set forth above.

  /s/  Jennifer L. Joubert
Jennifer L. Joubert (B.B.O. No. 07847)
jjoubert@bglaw.com
Barton Gilman LLP
One Liberty Square, Fourth Floor
Boston, MA  02109
T:  617.654.8200 | F:  617.482.5350

Dated:  December 30, 2025

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| ) | Case No. 25-10233-KB |
| In Re: ) | |
| ) | Chapter 13 |
| Brian J. Goodman, Sr. ) | |
| Debtor ) | December 30, 2025 |
| ) | |

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on December 30, 2025, I electronically filed the foregoing document with the Clerk of the Bankruptcy Court for the District of New Hampshire using the CM/ECF System, which will send electronic notification of such filing to appearing counsel, including, but not limited to, the following:

Office of the U.S. Trustee:                USTPRegion01.MR.ECF@usdoj.gov

Andrew M. Dudley, Bankruptcy Trustee:        jawill@chap13.com

I further hereby certify that on December 30, 2025, I mailed via first class mail, postage prepaid, a copy of this foregoing document to the following:

DEBTOR:

Brian J. Goodman, Sr. , Pro-Se
40 Hall Street
Concord, NH 03301

                                 /s/  Jennifer L. Joubert
                                Jennifer L. Joubert (B.B.O. No. 07847)
                                jjoubert@bglaw.com
                                Barton Gilman LLP
                                One Liberty Square, Fourth Floor
                                Boston, MA  02109
                                T:  617.654.8200 | F:  617.482.5350

# EXHIBIT A

Cop

# NOTE

JUNE 06, 2007                    ATTLEBORO                    MASSACHUSETTS
[Date]                            [City]                           [State]

33-35 PINECREST CIRCLE, CONCORD, NH 03301
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    231,000.00    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    7.875    %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the    1st    day of each month beginning on    AUGUST, 2007    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on    JULY 01, 2037    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION
603 NORTH WILMOT ROAD, TUCSON, AZ 85711    or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $    1,674.91    .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

NEW HAMPSHIRE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP-5N(NH) (0006)                    Page 1 of 3                    LENDER SUPPORT SYSTEMS, INC. 5NNH.NEW (02/03)

Form 3330 1/01
Initials [signature]

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of ____ 15 ____ calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be ____ 5.000 ____ % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

Initials: _____

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**11. ATTORNEYS' FEES**

Pursuant to New Hampshire Revised Statutes Annotated Section 361-C:2, in the event that Borrower shall prevail in (a) any action, suit or proceeding, brought by Lender, or (b) an action brought by Borrower, reasonable attorneys' fees shall be awarded to Borrower. Further, if Borrower shall successfully assert a partial defense or set-off, recoupment or counterclaim to an action brought by Lender, a court may withhold from Lender the entire amount or such portion of its attorneys' fees as the court shall consider equitable.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)        _____ (Seal)
BRIAN J. GOODMAN               -Borrower                                      -Borrower

_____ (Seal)        _____ (Seal)
                               -Borrower                                      -Borrower

WITHOUT RECOURSE,
PAY TO THE ORDER OF
Countrywide Bank, FSB

FIRST MAGNUS FINANCIAL CORPORATION
an Arizona Corporation

_____ (Seal)        _____ (Seal)
                               -Borrower   BY: Karen Kramer, Office Manager   -Borrower

_____ (Seal)        _____ (Seal)
                               -Borrower                                      -Borrower

PAY TO THE ORDER OF                    PAY TO THE ORDER OF
COUNTRYWIDE HOME LOANS, INC
WITHOUT RECOURSE                       WITHOUT RECOURSE
COUNTRYWIDE BANK, FSB                  COUNTRYWIDE HOME LOANS, INC

BY Laurie Meder                        BY Michele Sjolander
LAURIE MEDER                           MICHELE SJOLANDER
SENIOR VICE PRESIDENT                  EXECUTIVE VICE PRESIDENT

**EXHIBIT B**

Doc# 681981
Book: 2994
Pages: 0871 — 0889
Filed & Recorded
06/11/2007    1:24PM
KATHI L. GUAY, CPO, REGISTER

MERRIMACK COUNTY REGISTRY OF DEEDS
RECORDING        $        82.00
SURCHARGE        $         2.00
POSTAGE          $         1.31

Book  2994    Page  871

RECEIVED
JUL 02 2007

Return To:

FIRST MAGNUS FINANCIAL CORP.

603 N. WILMOT
TUCSON, AZ 85711

Prepared By:

FIRST MAGNUS FINANCIAL CORPORATION

603 N. WILMOT
TUCSON, AZ 85711

————————[Space Above This Line For Recording Data]————————

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated          JUNE 06, 2007           ,
together with all Riders to this document.
(B) "Borrower" is
BRIAN J GOODMAN A SINGLE MAN

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee
under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI  48501-2026, tel. (888) 679-MERS.

NEW HAMPSHIRE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3030  1/01
V-6A(NH) (0511)                              Page 1 of 15          LENDER SUPPORT SYSTEMS INC. MERS6ANH.NEW (03/06)

(D) "Lender" is
FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION

Lender is a CORPORATION
organized and existing under the laws of  ARIZONA
Lender's address is
603 NORTH WILMOT ROAD, TUCSON, AZ 85711
(E) "Note" means the promissory note signed by Borrower and dated          JUNE 06, 2007
The Note states that Borrower owes Lender
TWO HUNDRED THIRTY ONE THOUSAND AND NO/100 X X X X X X X X X X X X X X X X
                                                                    Dollars
(U.S. $ 231,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than          JULY 01, 2037
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider        ☐ Condominium Rider            ☒ 1-4 Family Rider
☐ Graduated Payment Rider      ☐ Planned Unit Development Rider ☐ Biweekly Payment Rider
☐ Balloon Rider                ☐ Rate Improvement Rider        ☐ Second Home Rider
☐ Other(s) [specify]

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials: ___

V-6A(NH) (0511)                          Page 2 of 16                          Form 3030  1/01

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS with mortgage covenants, and with power of sale, the following described property located in the                  COUNTY            of            MERRIMACK            :
                    [Type of Recording Jurisdiction]            [Name of Recording Jurisdiction]
LEGAL DESCRIPTION ATTACHED HERETO AND MADE PART HEREOF ......AND BEING MORE
PARTICULARLY DESCRIBED IN EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: MAP 122-A-2-06                    which currently has the address of
                    33-35 PINECREST CIRCLE                    [Street]
          CONCORD                [City], New Hampshire            03301        [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:  to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

V-6A(NH) (0511)                    Page 3 of 16                    Form 3030    1/01

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

V-6A(NH) (0511)                    Page 6 of 15                    Form 3030 1/01

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

V-6A(NH) (0511)                    Page 8 of 16                    Form 3030   1/01

Initials

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

Initials 

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail copies of a notice of sale in the manner provided by Applicable Law to Borrower and other persons prescribed by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender shall deliver to the purchaser Lender's deed conveying indefeasible title to the Property, discharged of all rights of redemption by Borrower. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Discharge.** The Lender, within 60 days after this Security Instrument is satisfied and having reasonable charges tendered to the Lender, shall cause the discharge of this Security Instrument to be recorded in the registry of deeds where the Property lies. The recording fees associated with the discharge of this Security Instrument may be charged to the Borrower, if the Borrower received written disclosure that such fees would be so charged. The Lender shall provide written confirmation of the discharge within the 60-day period to the payor of the final payment in satisfaction of this Security Instrument.

24. **Releases.** Borrower, and Borrower's spouse, if any, release all rights of homestead in the Property and release all rights of curtesy and other interests in the Property.

25. **Attorneys' Fees.** Pursuant to New Hampshire Revised Statutes Annotated Section 361-C:2, in the event that Borrower shall prevail in (a) any action suit or proceeding, brought by Lender, or (b) an action brought by Borrower, reasonable attorneys' fees shall be awarded to Borrower. Further, if Borrower shall successfully assert a partial defense or set-off, recoupment or counterclaim to an action brought by Lender, a court may withhold from Lender the entire amount or such portion of its attorneys' fees as the court shall consider equitable.



Book 2994    Page 884

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____
                                           -Witness

_____
                                           -Witness

_____(Seal)          _____(Seal)
BRIAN J GOODMAN          -Borrower                                   -Borrower

_____(Seal)          _____(Seal)
                         -Borrower                                   -Borrower

_____(Seal)          _____(Seal)
                         -Borrower                                   -Borrower

_____(Seal)          _____(Seal)
                         -Borrower                                   -Borrower

Book 2994   Page 885

STATE OF  NEW HAMPSHIRE
(County) of  *Merrimack*

   This instrument was acknowledged before me on  June 6, 2007  by
BRIAN J GOODMAN

_____
                     (Signature of Notarial Officer)

*Notary Public*  Title (and rank)

(Seal, if any)

My Commission Expires:  April 6, 2010

V-6A(NH) (0511)　　　　　Page 15 of 15　　　　　Form 3030　1/01

Book 2994   Page 886

# Fidelity National Title
### INSURANCE COMPANY ·

## EXHIBIT A

A certain tract or parcel of land with any buildings which may be thereon, situate in the City of Concord, Merrimack County, New Hampshire, on the southerly side of Pine Crest Circle, so-called, and being Lot 7, as shown on Plan #10304 recorded in the Merrimack County Registry of Deeds, more particularly bounded and described as follows:

Beginning at a granite bound to be set on the southerly side of Pine Crest Circle, and being the northwesterly corner of the within described premises;

Thence South 09° 44' 23" West along the easterly boundary line of Lot 8 on said plan, a distance of 270.60 feet to a granite bound to be set;

Thence South 45° 49' 32" East, a distance of 52.80 feet along a stone wall to a granite bound to be set in said stone wall just before a westerly junction in the stone wall;

Thence North 78° 57' 10" East along said stone wall, a distance of 292.04 feet to a granite bound to be set at the southeasterly corner of the within described premises;

Thence North 11° 02' 50" West along the westerly boundary line of Lot 6 on said plan, a distance of 205.00 feet to a granite bound to be set on said Pine Crest Circle;

Thence westerly and curving northerly 250.00 feet along the arc of a curve with a radius of 325.00 feet to the point of beginning.

Containing 68,473 square feet (1.572 acres), more or less.

For title reference see deed recorded October 21, 2998 in Book 2123, Page 1267.

# 1-4 FAMILY RIDER
### (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this      6th      day of      JUNE, 2007
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Note to
FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION

(the "Lender") of the same date and covering the Property described in the Security
Instrument and located at:

33-35 PINECREST CIRCLE, CONCORD, NH  03301
[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT. In addition to
the Property described in the Security Instrument, the following items now or hereafter
attached to the Property to the extent they are fixtures are added to the Property description,
and shall also constitute the Property covered by the Security Instrument: building materials,
appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or
intended to be used in connection with the Property, including, but not limited to, those for
the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light,
fire prevention and extinguishing apparatus, security and access control apparatus, plumbing,
bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers,
disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades,
curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings,
all of which, including replacements and additions thereto, shall be deemed to be and remain
a part of the Property covered by the Security Instrument. All of the foregoing together with
the Property described in the Security Instrument (or the leasehold estate if the Security
Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security
Instrument as the "Property."

B. USE OF PROPERTY; COMPLIANCE WITH LAW. Borrower shall not seek, agree to or
make a change in the use of the Property or its zoning classification, unless Lender has
agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations
and requirements of any governmental body applicable to the Property.

C. SUBORDINATE LIENS. Except as permitted by federal law, Borrower shall not allow
any lien inferior to the Security Instrument to be perfected against the Property without
Lender's prior written permission.

D. RENT LOSS INSURANCE. Borrower shall maintain insurance against rent loss in
addition to the other hazards for which insurance is required by Section 5.

Initials:

MULTISTATE 1- 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01
V-57R (0411).01        Page 1 of 3        LENDER SUPPORT SYSTEMS INC. 57R.NEW (06/06)

Book 2994  Page 888

E. "BORROWER'S RIGHT TO REINSTATE" DELETED. Section 19 is deleted.

F. BORROWER'S OCCUPANCY. Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

G. ASSIGNMENT OF LEASES. Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION. Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

I. CROSS-DEFAULT PROVISION. Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

Initials:

V-57R (0411).01       Page 2 of 3       Form 3170 1/01

Book 2994    Page 889

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_____ (Seal)
BRIAN J GOODMAN                    -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

V-57R (0411).01              Page 3 of 3              Form 3170 1/01

MERRIMACK COUNTY RECORDS

_____ CPO, Register

# EXHIBIT C

**Copy**

Documents provided by DataTree LLC via its proprietary imaging with the tree of 3314 Page 1569

```
Doc#011544
Book:3314 Page:1569 - 1569
e-Filed   05/16/2012   8:03:02 AM
KATHI L. GUAY, CPO, REGISTER
MERRIMACK COUNTY REGISTRY OF DEEDS
    RECORDING              $     10.00
    SURCHARGE              $      2.00
```

MERRIMACK COUNTY RECORDS *Kathi L. Guay* ,CPO, Register

Property Address:
33-35 Pine Crest Cir
Concord, NH 03301-1934

This space for Recorder's use

Recording Requested By:
**Bank of America**
Prepared By:
**Bank of America**
800-444-4302
1800 Tapo Canyon Road
Simi Valley, CA 93063

When recorded mail to:
**CoreLogic**
450 E. Boundary St.
Attn: Release Dept.
Chapin, SC 29036

## ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor" whose address is 1901 E Voorhees Street, Suite C, Danville, IL 61834 does hereby grant, sell, assign, transfer and convey unto BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP whose address is 13150 WORLD GATE DR, HERNDON, VA 20170

all beneficial interest under that certain Mortgage described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage.

| | |
|---|---|
| Original Lender: | **FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION** |
| Borrower(s): | **BRIAN J GOODMAN A SINGLE MAN** |
| Date of Mortgage: | 6/6/2007 |
| Original Loan Amount: | $231,000.00 |

Recorded in Merrimack County, NH on: 6/11/2007, book 2994, page #871 and instrument number 681981

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on
5-14-2012

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.

By: _____

Martha Munoz Vice President

State of California
County of Ventura

On **MAY 1 4 2012** before me, **VAZRIK SARAFIANS** , Notary Public, personally
appeared **MARTHA MUNOZ** , who proved to me on the basis of satisfactory evidence to be
the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public: **VAZRIK SARAFIANS**      (Seal)
My Commission Expires: NOV/06/2013

VAZRIK SARAFIANS
Commission # 1867732
Notary Public - California
Los Angeles County
My Comm. Expires Nov 6, 2013

# EXHIBIT D

Doc#: 823394
Book: 3344 Pages: 1492
10/16/2012   12:46PM

MCRD Book 3344 Page 1492

MERRIMACK COUNTY RECORDS

*Kath L. Gray*, CPO, Register

This space for Recorder's use

Recording Requested By:
Bank of America

Prepared By:
Danilo Cuenca
800-444-4302
1800 Tapo Canyon Road
Simi Valley, CA 93063

When recorded mail to:
Bank of America, N.A.
Document Processing Mail
Code:TX2-979-01-19
Attn:Assignment Unit
4500 Amon Carter Blvd.
Fort Worth, TX 76155

ENV

Property Address:
33-35 Pine Crest Cir
Concord, NH 03301-1824

## ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is 1800 Tapo Canyon Road, Simi Valley, CA 93063 does hereby grant, sell, assign, transfer and convey unto **FEDERAL NATIONAL MORTGAGE ASSOCIATION** whose address is 14221 Dallas Parkway, Suite 100, Dallas, TX 75254 all beneficial interest under that certain Mortgage described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage.

Original Lender: **FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION**

Borrower(s): **BRIAN J GOODMAN A SINGLE MAN**

Date of Mortgage: 6/6/2007

Original Loan Amount: **$231,000.00**

Recorded in Merrimack County, NH on: 6/11/2007, book 2994, page 0871 and instrument number 681981

Contact Federal National Mortgage Association for this instrument c/o Seterus, Inc, 14523 SW Millikan Way #200, Beaverton, OR 97005, telephone # 1-866-570-5277, which is responsible for receiving payments.

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on
10/6/12

Bank of America, N.A.

By: _____
Lisa Nix
Assistant Vice President

State of California
County of Ventura

On OCT 0 6 2012 before me, _____Lori Filipa Kosor_____, Notary Public, personally appeared _____Lisa Nix_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

[Notary Seal:
LORI FILIPA KOSOR
Commission # 1870931
Notary Public - California
Ventura County
My Comm. Expires Nov 9, 2013]

Notary Public: _____Lori Filipa Kosor_____   (Seal)
My Commission Expires: NOV 0 9 2013

**EXHIBIT E**

Prepared By and Return To:
Maged Farag
Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(239) 351-2442

_____ Space above for Recorder's use _____

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **FEDERAL NATIONAL MORTGAGE ASSOCIATION**, whose address is **13150 WORLDGATE DRIVE, HERNDON, VA 20170**, (ASSIGNOR), does hereby grant, assign and transfer to **US BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR VRMTG ASSET TRUST**, whose address is **888 SEVENTH AVENUE 10TH FLOOR, NEW YORK, NY 10019**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: 6/6/2007
Original Loan Amount: $231,000.00
Executed by (Borrower(s)): BRIAN J. GOODMAN
Original Lender: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR FIRST MAGNUS FINANCIAL CORPORATION, ITS SUCCESSORS AND ASSIGNS**
Filed of Record: In Mortgage Book/Liber/Volume 2994, Page 0871
Document/Instrument No: 681981 in the Recording District of Merrimack, NH, Recorded on 6/11/2007.

Property more commonly described as: **33-35 PINECREST CIRCLE, CONCORD, NEW HAMPSHIRE 03301**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: **10/1/2021**

**FEDERAL NATIONAL MORTGAGE ASSOCIATION, BY MERIDIAN ASSET SERVICES, LLC, ITS ATTORNEY-IN-FACT**

By: MURAT DENIZ
Title: VICE PRESIDENT

Witness Name: DIEP DOAN

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of      **FLORIDA**
County of    **PINELLAS**

On **10/1/2021**, before me, **BRIANNA DAVIAU**, a Notary Public, personally appeared **MURAT DENIZ, VICE PRESIDENT** of/for **MERIDIAN ASSET SERVICES, LLC, AS ATTORNEY-IN-FACT FOR FEDERAL NATIONAL MORTGAGE ASSOCIATION**, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **FLORIDA** that the foregoing paragraph is true and correct. I further certify the foregoing instrument was acknowledged before me by means of ☑ physical presence or ☐ online notarization and that MURAT DENIZ, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): **BRIANNA DAVIAU**
My commission expires: **5/20/2024**

Brianna Daviau
Notary Public
State of Florida
Comm# HH002315
Expires 5/20/2024

**EXHIBIT F**

Prepared By and Return To:
**Murat Deniz**
Meridian Asset Services, LLC
140 Fountain Parkway N Suite 100
St. Petersburg, FL 33716
(239) 351-2442

Space above for Recorder's use

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **US BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR VRMTG ASSET TRUST**, whose address is **1011 CENTRE ROAD, SUITE 203, WILMINGTON, DE 19805**, (ASSIGNOR), does hereby grant, assign and transfer to **JPMORGAN CHASE BANK, N.A.**, whose address is **383 MADISON AVENUE, 8TH FLOOR, NEW YORK, NY 10179**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: 6/6/2007
Original Loan Amount: **$231,000.00**
Executed by (Borrower(s)): **BRIAN J. GOODMAN**
Original Lender: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR FIRST MAGNUS FINANCIAL CORPORATION, ITS SUCCESSORS AND ASSIGNS**
Filed of Record: In Mortgage Book/Liber/Volume **2994**, Page **0871**
Document/Instrument No: **681981** in the Recording District of **Merrimack**, NH, Recorded on **6/11/2007**.

Property more commonly described as: **33-35 PINECREST CIRCLE, CONCORD, NEW HAMPSHIRE 03301**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: ___MAY 3 0 2025___

**US BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR VRMTG ASSET TRUST, BY NEWREZ LLC F/K/A NEW PENN FINANCIAL, LLC D/B/A SHELLPOINT MORTGAGE SERVICING, AS ATTORNEY IN FACT**

By: **JANALYNNE HODDEN**
Title: **VICE PRESIDENT**

Witness Name: ___Christina Van Waters___

---

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED **THE** DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

---

State of     **SOUTH CAROLINA**
County of    **GREENVILLE**

MAY 3 0 2025

On _____, before me, _Angie Fay Chapman_____, a Notary Public, personally appeared **JANALYNNE HEDDEN, VICE PRESIDENT** of/for **NEWREZ LLC F/K/A NEW PENN FINANCIAL, LLC D/B/A SHELLPOINT MORTGAGE SERVICING, AS ATTORNEY IN FACT FOR US BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR VRMTG ASSET TRUST**, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **SOUTH CAROLINA** that the foregoing paragraph is true and correct. I further certify JANALYNNE HEDDEN, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

_Angie Fay Chapman_
(Notary Name): _____
My commission expires: **MAR 2 2 2034**

> ANGIE FAY CHAPMAN
> Notary Public, State of South Carolina
> My Commission Expires 3/22/2034

Return to:
Raymond J. DiLucci, PA
81 South State Street
Concord, NH  03301

## 600.00    WARRANTY DEED

**KNOW ALL MEN BY THESE PRESENTS** that I, Brian J. Goodman, a single person, of 40 Hall St., City of Concord, County of Merrimack and State of New Hampshire 03301, for consideration paid, grant to Fosterville Properties, LLC of 40 Hall St., City of Concord, County of Merrimack and State of New Hampshire 03301, with Warranty Covenants, the real estate located at 33-35 Pine Crest Circle, in the City of Concord, County of Merrimack and State of New Hampshire, more particularly bounded and described as follows:

A certain tract or parcel of land with any buildings which may be thereon, situate in the City of Concord, Merrimack County, New Hampshire, on the southerly side of Pine Crest Circle, so-called, and being Lot 7, as shown on Plan #10304 recorded in the Merrimack County Registry of Deeds, more particularly bounded and described as follows:

Beginning at a granite bound to be set on the southerly side of Pine Crest Circle, and being the northwesterly corner of the within described premises;

Thence South 09 44' 23" West along the easterly boundary line of Lot 8 on said plan, a distance of 270.60 feet to a granite bound to be set;

Thence South 45 49' 32" East, a distance of 52.80 feet along a stone wall to a granite bound to be set in said stone wall just before a westerly junction in the stone wall;

Thence North 78 57' 10" East along said stone wall, a distance of 292.04 feet to a granite bound to be set at the southeasterly corner of the within-described premises;

Thence North 11 02' 50" West along the westerly boundary line of Lot 6 on said plan, a distance of 205.00 feet to a granite bound to be set on said Pine Crest Circle,

Thence Westerly and curving northerly 250.00 feet along the arc of a curve with a radius of 325.00 feet to the point of beginning

Containing 68,473 square feet (1.572 acres).

Meaning and intending to describe and convey all and the same real estate conveyed to Brian J. Goodman by Quitclaim Deed of JoAnn Samson dated May 15, 1998 and recorded in the Merrimack County Registry of Deeds at Book 2123, Page 1267.

**WITNESS MY HAND THIS 19th DAY OF MARCH, 2025**

**Witness**

**Brian J. Goodman**

**STATE OF NEW HAMPSHIRE**
**COUNTY OF MERRIMACK**

Personally appeared before me, Brian J. Goodman, known to be the person whose name is subscribed to the foregoing instrument and acknowledged that he/she/they executed the same for the purposes therein contained.

Before me,

Dated: March 19, 2025

Notary Public/Justice of the Peace